***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed between plaintiff and defendant-employer on or about June 8, 2009, the date of injury.
3. The carrier liable on the risk is correctly named above.
4. Plaintiff alleges to have sustained an injury to his right upper arm on June 8, 2009, which defendants accepted as compensable.
5. Plaintiff's average weekly wage is $463.27, yielding a compensation rate of $308.86.
 ***********
The following were submitted to the Deputy Commissioner as:
 STIPULATED EXHIBITS
1. The Pretrial Agreement, marked as Stipulated Exhibit #1.
2. A collection of documents, including the Industrial Commission Forms filed in this matter, plaintiff's medical records, and discovery information, collectively paginated 1-391 and marked as Stipulated Exhibit #2.
3. An average weekly wage stipulation signed by the parties, marked as Stipulated Exhibit #3.
4. A group of documents including plaintiff's employment, wage, and vocational information, paginated 391-518, and marked as Stipulated Exhibit #4.
 ***********
The following was submitted to the Deputy Commissioner as:
 EXHIBITS
1. Two pages of emails dated December 29, 2009, marked as Plaintiff's Exhibit 1.
 *********** *Page 3 
As set forth in the Pre-Trial Agreement and Deputy Commissioner Gillen's January 21, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUE
1. To what workers' compensation benefits and/or medical treatment is plaintiff entitled as a result of the workplace injury?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the Deputy Commissioner, plaintiff was 46 years old. Plaintiff's job tasks with defendant-employer involved working on commercial vehicles, mainly removing and replacing tires, and changing oil. The physical requirements of the job included climbing ladders, prolonged standing, heavy grip strength, overhead reaching and lifting, lifting up to 100 pounds, bending, squatting, and pushing/pulling.
2. Plaintiff completed the eleventh grade. Plaintiff's vocational history, aside from his employment with defendant-employer, includes working five years as a metal powder coater, one year at Wal-Mart as a tire changer, and heavy truck mechanical work.
3. On June 8, 2009, while plaintiff was working for defendant-employer, he suffered an injury to his right shoulder and/or upper arm when he attempted to hold upright a large tractor tire that was falling to its side. The tractor tire was being manually transported by plaintiff and had been filled with water to give it better traction as plaintiff rolled it. As plaintiff rolled it across the floor, the tire began to tip over. As plaintiff attempted to hold it upright, plaintiff felt pain and pulling in his right shoulder. The water-filled tractor tire was approximately four feet in *Page 4 
diameter, two feet wide, and weighed approximately 175 to 200 pounds.
4. Defendants filed a Form 63 dated June 19, 2009. This Form indicates that plaintiff suffered a "right arm strain" on June 8, 2009, explains that plaintiff's disability began on June 9, 2009, and documents that weekly compensation commenced on June 16, 2009.
5. Following the June 8, 2009 incident, plaintiff first received medical treatment on June 10, 2009, at Carteret General Hospital from Dr. Gregory Risk. The medical records from this visit document that "two days ago" plaintiff "felt a sudden pop" in his "right shoulder area." "Right shoulder strain" and "Biceps tendon tear/strain" are given as Dr. Risk's diagnoses in this record.
6. Plaintiff underwent a surgical procedure on his right shoulder performed by Dr. Robert Coles on July 7, 2009. The record documenting this procedure indicates that the postoperative diagnoses included "Right shoulder pain," "Grade 2 chondral injury to glenoid," "Fraying of superior labrum," and "Partial tear of middle glenhumeral ligament."
7. Plaintiff attempted to return to work on or about November 9, 2009, and was assigned light duty tasks by defendant-employer. The light duty tasks assigned plaintiff included performing oil changes as well as removing and replacing passenger car tires, which weigh approximately 35 pounds.
8. Notwithstanding the light duty nature of the tasks assigned, plaintiff was unable to continue working due to significant pain. John Martin was the store manager at plaintiff's location and was plaintiff's direct supervisor. Subsequent to his return to work, plaintiff contacted Mr. Martin and informed Mr. Martin that plaintiff would be unable work for an indefinite amount of time due to his continued shoulder pain. *Page 5 
9. A medical record from Dr. Coles generated following a December 10, 2009 visit indicates a diagnosis of "Shoulder pain — right. Re-exacerbation of soft tissue shoulder pain right shoulder. No long term improvement after injection." The note also indicates that "[plaintiff] has been out of work 1.5 weeks." Under the "Plan" section of this medical note, Dr. Coles goes on to explain "light duty at work, no lifting greater than 20 pounds. Avoid overhead work. Paperwork filled out and faxed."
10. The light duty tasks assigned plaintiff subsequent to his return to work were not within the restrictions as assigned by Dr. Coles on December 10, 2009.
11. Defendant-employer's "Corrective Counseling Report," dated December 14, 2009, alleges that plaintiff "did not call or show up for work from 12-5-09 [through] 12-12-09. Was supposed to be at work 12-14-09 — did not show or call." This document does not state that plaintiff was terminated. On the face of the document, "Termination" was checked under "Possible consequences if performance and behavior are not corrected."
12. Plaintiff learned he was terminated from employment with defendant-employer when his insurance card stopped working.
13. Plaintiff understood that the restrictions given to him by Dr. Coles on December 10, 2009 prevented plaintiff from doing the light-duty work previously provided by defendant-employer. Regarding his behavior in December 2009, plaintiff reasonably believed that there was no need to telephone every day to inform defendant-employer that he was not coming to work given the notice he gave to Mr. Martin, the restrictions provided by Dr. Coles' note, and the arrangement that was in place for the months following June 8, 2009, when plaintiff was unable to work, during which time plaintiff was not required to call in to state his inability to work. *Page 6 
14. Due to the circumstances surrounding plaintiff's return to work with restrictions, and his subsequent termination as a result, at least in part, of absences consequent of the June 8, 2009 workplace incident, defendants have failed to established that plaintiff's termination was for a reason unrelated to his compensable injury, for which a non-injured employee would have been terminated.
15. At no time did defendant-employer offer plaintiff suitable employment within the work restrictions given to plaintiff by Dr. Coles on December 10, 2009.
16. Dr. Josephus T. Bloem, who examined plaintiff on June 17, 2010, was deposed subsequent to the Deputy Commissioner's hearing. Dr. Bloem testified that plaintiff has permanent work restrictions, stating: "[plaintiff] should limit the activities with that shoulder, he should avoid overhead work, and he should avoid heavy lifting." Dr. Bloem went on to specify that plaintiff "should restrict his lifting up to 50 pounds."
17. Dr. Robert E. Coles was deposed subsequent to the Deputy Commissioner's hearing. Dr. Coles testified that he could not give an opinion about plaintiff's ability to return to a job that had a 100-pound lifting requirement.
18. On June 8, 2009, while plaintiff was working for defendant-employer, he suffered an injury by accident to his right shoulder and/or upper arm when he attempted to hold upright a large, water-filled tractor tire that was falling to its side. This incident constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. Further, it was an unlooked for and untoward event that was not expected or designed by plaintiff.
19. The credible medical and vocational evidence of record shows that, as a result of the June 8, 2009 accident, taking into account plaintiff's physical and vocational limitations, *Page 7 
plaintiff has been totally disabled and unable to earn any wages in any competitive employment from June 9, 2009, and continuing.
20. Plaintiff continues to suffer significant and debilitating pain as a result of the June 8, 2009 workplace accident. Plaintiff has made reasonable, yet unsuccessful, efforts to find alternative employment subsequent to his termination from defendant-employer. These efforts have included inquiring about jobs at Wal-Mart, Sears, Lowe's, a grass cutting business, a BP gas station, and a restaurant.
21. The greater weight of the evidence establishes that the medical treatment plaintiff received following the June 8, 2009 accident was reasonable and medically necessary, and was reasonably calculated to affect a cure and give relief from plaintiff's June 8, 2009 injuries.
22. The parties stipulated that plaintiff's average weekly wage was $463.27. This average weekly wage yields a compensation rate of $308.86.
23. Defendants are entitled to a credit for all wages and temporary total disability compensation paid to plaintiff subsequent to June 8, 2009.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 8, 2009, while plaintiff was working for defendant-employer, he suffered an injury by accident to his right shoulder and/or upper arm when he attempted to hold upright a large, water-filled tractor tire that was falling to its side. This incident constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. Further, it was an unlooked for and untoward event that was not *Page 8 
expected or designed by plaintiff. N.C. Gen. Stat. § 97-2(6);Harding v. Thomas Howard Co., 256 N.C. 427 (1962). Our courts have held that an injury is compensable if it is caused by an accident that arises out of employment, materially accelerates or aggravates a preexisting condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr.,129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
2. Given the credible medical and vocational evidence of record, and plaintiff's compensable injury of June 8, 2009, plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $308.86 per week for the period from June 9, 2009, and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. According to Russell, plaintiff can prove disability four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In the present case, the evidence shows that after a reasonable effort on his part, plaintiff has been unsuccessful in his efforts to obtain suitable employment. *Page 9 
4. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the June 8, 2009 compensable accident when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
5. Due to the circumstances surrounding plaintiff's return to work with restrictions, and his subsequent termination as a result, at least in part, of absences consequent of the June 8, 2009 workplace incident, defendants have not established that plaintiff's termination was for a reason unrelated to his compensable injury, for which a non-injured employee would have been terminated. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
6. Defendants are entitled to a credit for all wages and temporary total disability compensation paid to plaintiff subsequent to June 8, 2009. N.C. Gen. Stat. § 97-42; Moretz v.Richards Assocs., Inc., 316 N.C. 539, 342 S.E.2d 844 (1986).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Given the credible medical and vocational evidence of record, and plaintiff's compensable injury of June 8, 2009, defendants shall pay plaintiff, subject to the attorney's fee approved below and the credit due defendants for the wages and temporary total disability compensation plaintiff has received, temporary total disability compensation at a rate of $308.86 per week for the period from June 9, 2009, and continuing until plaintiff returns to work or further order of the Commission. *Page 10 
2. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable accident sustained by plaintiff on June 8, 2009, when bills for the same have been approved pursuant to Industrial Commission Procedures.
3. A reasonable attorney fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth (4th) compensation check due plaintiff.
4. Defendants shall pay the costs.
This the 22nd day of July, 2011.
 S/___________________ DANNY LEE MCDONALD COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1